RENDERED: APRIL 28, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0466-MR

EMILY CLEMENTS                                                                          APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
          HONORABLE AUDRA J. ECKERLE, JUDGE
          ACTION NO. 18-CI-001151

STEAK 'N SHAKE, INC.; CINDY
BURDETTE; AND RODNEY TODD                                                   APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; KAREM AND MCNEILL, JUDGES.

THOMPSON, CHIEF JUDGE: Emily Clements ("Appellant") appeals from an

order of the Jefferson Circuit Court granting summary judgment in favor of Steak

'n Shake, Inc. and Cindy Burdette ("Appellees") in her action alleging that she was

subjected to a hostile work environment and retaliatory discharge. Appellant

argues that the circuit court erred in applying a common law tort theory to a

statutory claim; in dismissing the claim of retaliatory discharge; and that Steak 'n

Shake's destruction of a video showing an alleged sexual assault should result in a judgment against Steak 'n Shake on all claims. After careful review, we find no error and affirm the opinion and order granting summary judgment.

## FACTS AND PROCEDURAL HISTORY[1]

In 2017, Appellant was a 16-year-old, hourly employee at a Steak 'n Shake restaurant located on Dixie Highway in Jefferson County, Kentucky. Her duties included taking customer orders, serving food, refilling drinks, and cleaning her work area. Rodney Todd was employed at the same Steak 'n Shake restaurant as a grill cook. He worked the back half of the restaurant and helped with the drive-through.

According to Appellant, on December 23, 2017, she was in the employee breakroom at the restaurant when Todd entered the room. This was only the second time that she had any interaction with him. According to Appellant, Todd approached her, made a vulgar, highly inappropriate sexual comment to her, and then grabbed her in the area of her buttocks and vagina. Appellant would later state in her deposition that she was shocked and offended by what Todd did, and told two other servers named Emily and Taylor what had occurred. According to

---

[1] Appellant's statement of the case, as required by Kentucky Rules of Appellate Procedure ("RAP") 32(A)(3), consists solely of Appellant's affidavit. Our recitation of the facts is based on Appellant's affidavit; the affidavit of Steak 'n Shake employee relations manager, Rebekah Nevin; and other portions of the record.

Appellant, both servers told Appellant that she should tell a manager what happened.

Appellant went on to state that the incident caused her to forget to submit a customer's order. According to Appellant, this resulted in Steak 'n Shake employee Cindy Burdette berating Appellant in front of customers in the restaurant. In an affidavit, Steak 'n Shake employee relations manager, Rebekah Nevin, stated that Burdette was a server who occasionally worked a temporary shift lead when no manager was present. Appellant stated that one of the guests told Burdette that Burdette's treatment of Appellant was cruel, unkind, and unacceptable. Appellant said that Burdette's response to the customer was to mind her own business.

After Burdette approached Appellant about failing to submit the customer's order, Appellant informed Burdette about the incident involving Todd. According to Appellant, Burdette stated that Todd was important to the restaurant and could lose his job based on Appellant's accusation.

The customer who objected to Burdette's treatment of Appellant exited the building and spoke with Appellant's father, Scott Tyler, who was waiting to pick up Appellant. According to Appellant, Tyler told Appellant that the customer was concerned that Appellant was emotionally okay and that Tyler should go in the restaurant and talk to Appellant. Tyler entered the dining area,

and told Appellant to get her things and leave because she was not going to work there any longer if Burdette was going to berate her like that. Appellant told her father that Burdette had already terminated Appellant's employment for talking to the customer about work-related issues. When asked in deposition whether Burdette said, "you're terminated," Appellant answered "yes." Appellant stated that she had already been terminated before her father entered the restaurant. When Tyler confronted Burdette about berating Appellant in front of customers, Appellant stated that Burdette cursed at him, told him he was fat, and stated that it was none of his business.

When Appellant and Tyler were in his vehicle, Appellant told him about the incident with Todd. Tyler became very upset and started yelling at a group of employees who were outside the restaurant. He told them that he and the customers had called the police. Two police officers arrived shortly thereafter and interviewed several individuals present about the unwanted touching by Todd. Appellant told the police that he touched her between her buttocks and vagina. The officers subsequently produced a report which is part of the record. No criminal charges were filed.

That same day, Burdette called Steak 'n Shake general manager Alex Potter and informed him of Appellant's claim of sexual harassment. According to Nevin's affidavit, Potter instructed Burdette to document the statements she

obtained about the incident and give them to Potter. The following day, Tyler called the Steak 'n Shake hotline to make a complaint about the way his daughter was treated. According to Nevin, Tyler stated that Appellant no longer worked for Steak 'n Shake.

On December 24, 2017, district manager Mike Rauls called Tyler, requested any text messages between Todd and Appellant, and told Tyler that Steak 'n Shake would take appropriate action. After Rauls received the text messages from Tyler, he instructed Potter to terminate Todd's employment. Rauls told Potter to inform Appellant of Todd's termination, and to ask Appellant if she would return to work. Potter apparently was unable to get in contact with Appellant. Potter then told Tyler of Todd's termination and Tyler said that his daughter would not be returning to work at Steak 'n Shake.

On February 23, 2018, Tyler filed a complaint in Jefferson Circuit Court on behalf of Appellant against Steak 'n Shake, Burdette, and Todd. The complaint, and two subsequent amended complaints,[2] alleged that Steak 'n Shake improperly terminated Appellant's employment in response to her claim of sexual harassment, that Steak 'n Shake destroyed video evidence of the assault, and that Steak 'n Shake attempted to silence Appellant by telling her that she could have

_____

[2] Tyler was the plaintiff on the original complaint. Having reached the age of majority, Appellant was the plaintiff on the first and second amended complaints filed in February and October, 2021, respectively.

her job back if she dropped the matter. The second amended complaint asserted claims of sexual harassment, battery, and unlawful retaliation. The sexual harassment/hostile work environment claim and improper retaliation claim were grounded on Kentucky Revised Statutes ("KRS") Chapter 344, *i.e.*, the Kentucky Civil Rights Act or "KCRA."

Steak 'n Shake and Burdette later moved for summary judgment. In support of the motion, they asserted that Steak 'n Shake could not be held vicariously liable for Todd's alleged intentional tort, as Todd's actions were clearly not performed within the scope of his employment. Second, they argued that Appellant could not prove the existence of a hostile work environment, as Steak 'n Shake terminated Todd's employment within four days of the incident. They argued that they were entitled to summary judgment on Appellant's retaliation claim, as Appellant quit her job and suffered no adverse employment action. In addition, Burdette argued that the harassment claim must fail because there was no individual liability under the KCRA.

On March 31, 2022, the Jefferson Circuit Court entered an order granting the motion of Steak 'n Shake and Burdette for summary judgment. It determined that Kentucky case law expressly holds that an employer is not vicariously liable for an employee's intentional tort of a sexual nature which is outside the scope of employment. After citing the elements of a KCRA, the court

-6-

determined that Appellant could not satisfy the element requiring proof that Steak 'n Shake failed to take reasonable care to prevent and correct the sexually harassing behavior. It based this conclusion on the fact that Steak 'n Shake immediately investigated Appellant's claim and terminated Todd's employment within four days of the incident. The court went on to conclude that the claim of retaliation must fail because Burdette did not have the authority to fire Appellant, and because Appellant quit immediately after the incident. This appeal followed.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure ("CR") 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of

material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ARGUMENTS AND ANALYSIS

Appellant argues that the Jefferson Circuit Court committed reversible error in granting Appellees' motion for summary judgment. She asserts that the circuit court erred in applying a common law tort theory to her statutory civil rights claim alleging a hostile work environment; that the court erred in dismissing the retaliation claim; and, that Steak 'n Shake's alleged destruction of a video of the incident entitled her "to dismissal of Appellees defenses pertaining to Appellant's claim of a hostile work environment." The focus of her claim of error is her contention that she established a *prima facie* claim under the KCRA sufficient to overcome the motion of Steak n' Shake and Burdette for summary judgment.

Appellant has not complied with RAP 32(A)(4),[3] which requires,

> [a]n **argument** conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

---

[3] Formerly Kentucky Rules of Civil Procedure 76.12(4)(c)(v).

Appellant's argument section of the brief does not contain a statement at the beginning with reference to the record showing whether each issue was properly preserved for review and, if so, in what manner.

"A brief may be stricken for failure to substantially comply with the requirements of these rules." RAP 31(H)(1). The rule requiring an argument section including a statement of preservation is a requirement of RAP 32 encompassed by RAP 31(H)(1).

When a party fails to abide by the Rules of Appellate Procedure, we may choose "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted); *see also Ford v. Commonwealth*, 628 S.W.3d 147, 153-55 (Ky. 2021). Though it does not comply with RAP 32(A)(4), Appellant did address preservation in a footnote. Per *Hallis*, we will ignore the deficiency and proceed with the review.

## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

> Under KRS 344.040, it is unlawful for an employer, on the basis of sex, to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . [or] to limit, segregate, or classify employees in any way which would . . . tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee. In other words, consistent with Title VII of the 1964 Federal

Civil Rights Act, 42 U.S.C.[4] § 2000e-2(a)(1), the KCRA prohibits sexual harassment in the workplace that creates hostile or abusive work environment. The Kentucky Supreme Court has made clear that since the provisions of KCRA are virtually identical to those of the Federal act[,] . . . in this particular area we must consider the way the Federal act has been interpreted. In addition, an interpretation given to a federal statute by the United States Supreme Court is binding on state courts, any state law, decision, or rule to the contrary notwithstanding.

To establish successfully a *prima facie* showing of a cause of action predicated upon hostile work environment based on sex, a plaintiff must demonstrate that (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable.

*Becker v. Saber Management-Kentucky, LLC*, No. 2009-CA-000089-MR, 2009 WL 4060859, at *3-4 (Ky. App. Nov. 25, 2009) (internal quotation marks and citations omitted). These elements apply to a claim of co-worker sexual harassment. *See Grego v. Meijer, Inc.*, 239 F.Supp.2d 676 (W.D. Ky. 2002).

When viewing the record in a light most favorable to Appellant per *Steelvest*, *supra*, we conclude that evidence exists sufficient to demonstrate the existence of the first three elements of *Becker*. Appellant is a member of a protected class per KRS 344.040(1), she was subjected to sexual harassment, and the harassment was based on her sex.

---

[4] United States Code.

As to whether the fourth element, *i.e.*, the creation of a hostile environment, may be proven, "the court must consider all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Thornton v. Federal Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (internal quotation marks and citations omitted). Appellant's claim of an unwanted touching between her buttocks and vagina, if true, is clearly "physically threatening or humiliating" per *Thornton*.

The fifth element to be proven, if the matter were to proceed to trial, is whether Steak 'n Shake is vicariously liable for Todd's acts. In order to hold an employer accountable for an employee's sexual harassment of a co-worker,

> [p]laintiff must show that Defendant knew or should have known of the sexual harassment and failed to implement prompt and appropriate corrective action. When an employer responds to charges of co-worker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the fact the employer knew or should have known. The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment.

*Grego*, 239 F.Supp.2d at 681 (internal quotation marks, citations, and footnote omitted).

-11-

The record demonstrates that Steak 'n Shake conducted a pre-employment background check of Todd and implemented proactive anti-harassment policies. When notified of Appellant's claim that Todd touched her in an unwanted, sexual manner accompanied by vulgar language, Burdette called Steak 'n Shake general manager Alex Potter and informed him of Appellant's claim. Potter informed district manager Mike Rauls, who called Tyler. Rauls conducted a brief investigation and then instructed Potter to terminate Todd's employment. These actions occurred within 4 days of the incident, and during a timeframe which included the Christmas holiday. Even when considered in a light most favorable to Appellant, these facts do not evince an indifferent or unreasonable response by Steak 'n Shake sufficient to establish Steak 'n Shake's vicarious liability for Todd's acts. Since Appellant cannot prove an essential element of her sexual harassment claim, Steak 'n Shake is entitled to summary judgment on this issue. The Jefferson Circuit Court properly so concluded.

<u>RETALIATION</u>

Appellant next argues that the Jefferson Circuit Court erred in dismissing her retaliation claim. She asserts that after informing Burdette of Todd's action, Burdette improperly terminated Appellant's employment in retaliation of the claim. Citing *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790 (Ky. 2004), Appellant argues that in order to

overcome Steak 'n Shake's motion for summary judgment on this issue, she must only demonstrate that: 1) Steak 'n Shake was aware of Appellant's complaint and 2) there was a close, temporal relationship between the protected activity and the adverse action. Appellant contends that the record clearly reveals that Steak 'n Shake management was aware of the complaint and that there was a close, temporal relationship between Appellant's complaint and the termination of her employment. On this basis, Appellant argues that the circuit court erred in granting Steak 'n Shake's motion for summary judgment on this issue.

> KRS 344.280(1) prohibits an employer's retaliatory response to an employee's report or complaint about conduct which violates the KCRA. Interpreting unlawful retaliation under the KCRA consistent with the interpretation of unlawful retaliation under federal law, the Kentucky Supreme Court has set forth the elements of a *prima facie* case of retaliation under KRS 344.280 as follows: (1) an employee was engaged in a protected activity; (2) the exercise of the employee's civil rights was known by the employer; (3) the employer thereafter took an employment action adverse to the employee; and (4) a causal connection existed between the protected activity and the adverse employment action.

> Once a *prima facie* case of retaliation is established, the employer must articulate some legitimate, nondiscriminatory reason for its actions. If such a legitimate reason is articulated, the employee's burden is to "demonstrate that the proffered reason was not the true reason for the employment decision. In order to withstand summary judgment on the issue of pretext, the employee must produce evidence that either the proffered reason: (1) has no basis in fact; (2) did not

actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action.

*Becker*, 2009 WL 4060859, at *7 (internal quotation marks and citations omitted).

In her second amended complaint and deposition, Appellant alleged that Burdette fired her in retaliation for her complaint and for calling the police. When asked in deposition if Burdette used the words "you're terminated" shortly after Appellant's complaint, Appellant responded in the affirmative. The question for our consideration is whether the record, when viewed in a light most favorable to Appellant, satisfies elements (3) and (4). That is, whether Steak 'n Shake took adverse employment action (*i.e.*, fired Appellant), and whether a causal connection existed between Appellant's claim of sexual harassment and the adverse action.

At first blush, Appellant's deposition would appear to satisfy elements (3) and (4), at least in the context of a summary judgment motion. Steak 'n Shake, however, asserts that Burdette was merely a server who worked as a temporary shift lead when no manager was on site. Burdette, it argues, had no authority make human resources decisions nor to fire Appellant.

Further, Steak 'n Shake notes that on the evening of the incident, Appellant's father told Burdette that his daughter would not return to work. On December 24, 2017, Tyler also called the Steak 'n Shake employee hotline and said that Appellant would not be returning to work. In addition, Rauls instructed

Potter to inquire if Appellant would return to work. According to the record, Potter did not hear back from Appellant.

Given the totality of the record, we conclude that Appellant did not suffer adverse employment action as a result of her complaint. The uncontroverted deposition testimony is that Burdette had no authority to hire or fire employees. Tyler repeatedly stated that Appellant would not be returning to work – a wholly understandable response given what Appellant told him about the incident. Finally, Steak 'n Shake management, who did have the authority to hire and fire employees, sought to have Appellant continue with her employment. We conclude therefrom that, even when the record is viewed in a light most favorable to Appellant, she could not prove essential elements of her retaliation claim if the matter proceeded to trial. We find no error.

### SPOLIATION

Lastly, Appellant argues that Steak 'n Shake destroyed a closed-circuit video of the incident, and that this destruction or spoliation should result in sanctions including dismissal of Appellees' defenses. She asserts that in response to the claim of spoliation, Steak 'n Shake's counsel responded via email that no spoliation occurred, and that any video of the incident would have been recorded over in the normal course of business.

Appellant does not cite to any portion of the record demonstrating that a video of the incident existed, nor that any spoliation occurred. A series of emails appended to Appellant's written argument, which purports to be a conversation between Appellant's counsel and Steak 'n Shake's counsel, is not marked as an exhibit and Appellant does not cite to it as part of the record. *Arguendo*, even if a video of the incident existed and was destroyed, which the record does not demonstrate, Appellant could not prevail on her sexual harassment and retaliation claims for the reasons stated above. Finally, Appellant's claim of spoliation was not addressed in the order of summary judgment on appeal, though Appellant claims that it was raised in response to the motion for summary judgment. The duty rested with Appellant to ensure that the order of summary judgment addressed all issues before the court, and if necessary to make a CR 52.02 motion to amend its findings or make additional findings. *McKinney v. McKinney*, 257 S.W.3d 130, 134 (Ky. App. 2008). "In the absence of such a motion, this Court must presume that the evidence presented at trial supports the trial court's conclusions." *Id.* (citation omitted).

## **CONCLUSION**

When the record is viewed in a light most favorable to Appellant with all doubts resolved in her favor, *Steelvest*, *supra*, we conclude that the Jefferson Circuit Court properly determined that there were no genuine issues of material

fact and that Steak 'n Shake and Burdette were entitled to a judgment as a matter of law. Appellant could not demonstrate that Steak 'n Shake was vicariously liable on her claim of sexual harassment, as Steak 'n Shake took quick action to terminate Todd's employment after being notified of Appellant's claim. Appellant could also not prevail on a claim of retaliation, since Burdette had no authority to fire Appellant, her father stated more than once that she would not return to Steak 'n Shake, and Steak 'n Shake management inquired if Appellant were willing to continue working. Finally, Appellant offered no evidence of spoliation, nor that it would have overcome her inability to prove essential elements of the underlying claims. For these reasons, we affirm the opinion and order of the Jefferson Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kurt A. Scharfenberger
Louisville, Kentucky

BRIEF FOR APPELLEES STEAK 'N SHAKE AND CINDY BURDETTE:

Kenneth B. Siepman
Kevin Roberts
Indianapolis, Indiana

NO BRIEF FOR APPELLEE TODD.